The Full Commission, upon reconsideration of the evidence before the Deputy Commissioner and after receipt of additional evidence, reverses that portion of the Deputy Commissioner's Opinion and Award denying additional benefits to plaintiff.
 MOTIONS
Plaintiff's motion to compel medical treatment is dismissed as moot. Any further dispute between the parties with respect to ongoing medical treatment should be pursued, if necessary, by filing a new Form 33 Request for Hearing.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Aetna Casualty Surety Company is the carrier on the risk.
4. Plaintiff's average weekly wage at all relevant times was $420.00, yielding a compensation rate of $280.01.
5. On 23 March 1993, plaintiff suffered a compensable injury to her left arm.
6. Plaintiff last worked for the defendant-employer on 9 November 1994.
7. Medical records identified and attached to a 2-page document entitled "Medical Stipulation" dated 18 November 1996 and signed by both counsel have been admitted into evidence.
***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is a thirty-six year old female who began work at defendant-employer on 2 July 1990. She sustained an admittedly compensable injury to her shoulder on 23 May 1993, when she was assaulted by a customer.
2. The Commission approved a Form 21 Agreement on 6 October 1993 pursuant to which plaintiff was compensated for seven days of total disability.
3. After her injury, defendant-employer placed plaintiff on a modified duty program for about a year, where she received extra payroll to hire stockers so she would not have to do any heavy lifting herself.
4. Plaintiff was taken off modified work on 24 May 1994 when her treating physician, Dr. Minkin, rated and released her for regular duty with a 2% permanent partial impairment rating to the left arm.
5. As of 23 May 1994, plaintiff had resumed much of her lifting activity, lifting and pulling and unloading trucks. These activities resulted in some problems which plaintiff reported to Dr. Minkin.
6. A substantial portion of plaintiff's job required her to lift over her head to stock shelves and build displays, including boxes of antifreeze and bleach that weighed 25 pounds.
7. Plaintiff had shoulder pain while on work modified status. When she returned to regular duty, her pain worsened.
8. Plaintiff continued to work for Family Dollar Stores until 9 November 1994, when she resigned from Family Dollar Stores.
9. No physician advised plaintiff that she could not continue to work for Family Dollar Stores. After her resignation, plaintiff attempted to return to work for Family Dollar Stores on at least three occasions. Plaintiff was not under medical restrictions when she left her employment with defendant
10. After her resignation from Family Dollar Stores, plaintiff worked for Circle C Western Store and Belk department store, respectively. Plaintiff did not request and Dr. Minkin did not provide work restrictions during her employment with either of these employers.
11. Plaintiff claims that her departure from Family Dollar Stores was due to her inability to perform the work due to her shoulder injury. Plaintiff has continued to be employed in the retail management field and has attempted to return to work at Family Dollar Stores despite continuing shoulder symptomology.
12. Plaintiff began work at Circle C Western Wear on 11 November 1994 for $250 per week and continued working there until 30 September 1995 at the same rate of pay. Plaintiff could successfully perform this job.
13. After two weeks of unemployment, plaintiff began work at Belk from 12 October 1995 to the present at an average gross wage of $296.68 through the end of the year, and then at the rate of $224 per week until the time of the hearing before the Deputy Commissioner. Plaintiff has since been promoted several times and has received increases in pay accordingly. At the time of her July 1998 deposition, plaintiff was employed as a trainer, with an average weekly wage of $451.93.
14. At least by October 1994, plaintiff's shoulder problems worsened, although no work restrictions were ordered.
15. Pursuant to a Form 26 Supplemental Memorandum of Agreement approved 5 August 1994, the last payment of compensation was 11 August 1994. Plaintiff's Application for Compensation pursuant to G.S. 97-47 was filed 22 July 1996.
16. Despite multiple injections and other treatment from Dr. Minkin, plaintiff continued to have severe pain in her left shoulder. Dr. Minkin determined that further conservative treatment would not likely reduce her pain. On 17 July 1996, Dr. Minkin recommended surgery to provide plaintiff with additional relief of her pain in her left shoulder.
17. On 15 April 1997, Dr. Minkin performed an anterior acromioplasty of plaintiff's left shoulder. Plaintiff was medically excused from work from the date of surgery through 23 April 1997. On 5 January 1998, Dr. Minkin assessed a 5% permanent partial disability rating for plaintiff's left shoulder.
18. Plaintiff's worsened condition which necessitated surgery was the result of the compensable injury on 23 May 1993. The surgery was reasonably required to effect a cure or give relief.
19. Plaintiff's permanent partial disability as a result of the 23 March 1993 injury is 5% to her left arm.
20. Defendants' refusal to approve plaintiff's surgery and the contesting of her claim for continued medical treatment was unjustified and constitutes unfounded litigious behavior.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's worsening of condition and need for surgery, resulting in a temporary wage earning disability and an increased permanent partial disability rating, constitutes a change in condition. G.S. 97-47; Blair v. American Television Communications Corp., 124 N.C. App. 420, 423,477 S.E.2d 190, 192 (1996).
2. Plaintiff is entitled to continued medical treatment for her compensable injury. G.S. 97-25; Hyler v. GTE ProductsCo., 333 N.C. 258, 425 S.E.2d 698 (1993).
3. Plaintiff is entitled to compensation for the 3% increase in her permanent partial disability rating. G.S. 97-31.
4. Plaintiff is entitled to temporary total disability compensation for the period of time she was out of work recovering from her shoulder surgery. G.S. 97-29.
5. Due to defendants' unfounded litigiousness, plaintiff is entitled to recover attorney's fees in the amount of $750. G.S.97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses reasonably incurred by the plaintiff as a result of her compensable injury, including the surgery on her shoulder and any resulting necessary care and treatment.
2. Defendants shall pay plaintiff compensation for the 3% increase in plaintiff's permanent partial disability rating to her left arm. This amount shall be paid in a lump sum, subject to the attorney's fees awarded in paragraph 4.
3. Defendants shall pay plaintiff temporary total disability at the rate of $280.01 per week for the period of time from 15 April 1997 through 23 April 1997. This amount shall be paid in a lump sum, subject to attorney's fees awarded in paragraph 4.
4. Plaintiff's attorney is entitled to a reasonable attorney's fee of twenty-five percent of the lump sum award contained in paragraphs 2 and 3 of this Award. Defendants shall pay plaintiff's attorney $750.00 pursuant to G.S. 97-88.1. This amount shall be credited against the amount owed by plaintiff to her attorney.
5. Defendants shall pay the costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER